CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

February 29, 2024
LAURA A. AUSTIN, CLERK
BY:      /s/T. Taylor
           DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

JOHN DAVID ARNOLD,                        )
                                          )
            Plaintiff,                    )        Civil Action No. 7:21-cv-00533
                                          )
v.                                        )        **MEMORANDUM OPINION**
                                          )
OFFICER J.T. CREGGER, *et al.*,           )        By:    Hon. Thomas T. Cullen
                                          )               United States District Judge
            Defendants.                   )

Plaintiff John David Arnold, a former Virginia inmate proceeding *pro se*, brought this action under 42 U.S.C. § 1983 against various officials at Marion Correctional Treatment Center ("MCTC"). This matter is before the court on Defendants Officer J.T. Cregger, Officer A. Bogle, and Warden J. Artrip's (collectively, "Defendants") motion for summary judgment (ECF No. 82), and Arnold's cross-motion for summary judgment (ECF Nos. 86, 93).[1] Having reviewed the pleadings, briefs, and record, the motions are ripe for decision.[2] For the reasons discussed below, the court will (1) grant Defendants' motion for summary judgment as to (a) the official-capacity claims against all Defendants and (b) the individual-capacity claim against Artrip, (2) deny Defendants' motion for summary judgment as to the individual-capacity claims against Cregger and Bogle, and (3) deny Arnold's motion for summary judgment.

---

[1] Approximately four months after filing his initial summary-judgment motion, Arnold filed a second summary-judgment motion that states, in full: "Plaintiff moves for summary judgment. The Plaintiff requests this summary judgment in light of the pictures and evidence submitted by Defense and Plaintiff." (ECF No. 93.) That motion seeks the same relief as Arnold's initial motion (ECF No. 86) but does not set out any new arguments. Therefore, the court construes Arnold's two summary-judgment motions together as a single motion.

[2] The court dispenses with oral argument because it would not aid in the decisional process.

# I.  BACKGROUND

Arnold filed his complaint *pro se* and at all relevant times was an inmate at MCTC. He has since been released from custody. (*See* ECF No. 40.) Construing his amended complaint liberally,[3] Arnold sets forth the following claims against Defendants—in their individual and official capacities—under § 1983, seeking monetary damages, a declaratory judgment, and injunctive relief:

1.  Cregger: Excessive force in violation of the Eighth Amendment;

2.  Bogle: Bystander liability; and

3.  Artrip: Supervisory liability.

For each claim, the parties dispute many of the facts. It is therefore helpful to summarize the evidence related to each Defendant, in some detail, along with the matter's procedural history.

## A.  Officers Cregger and Bogle

The relevant events between Arnold and Officers Cregger and Bogle occurred during the afternoon of August 5, 2021, when the officers were escorting Arnold back to his cell from the outdoor recreation cages. (*See* Am. Compl. ¶¶ 14–17 [ECF No. 62]; Bogle Aff. ¶¶ 3–4, Ex. A [ECF No. 83-4].) The evidence related to Arnold's claims against Cregger and Bogle is best grouped into two categories: (1) evidence of the escort, which consists of silent MCTC surveillance videos[4] and the parties' accounts of what occurred; and (2) evidence from after the escort, which consists primarily of MCTC medical records.

---

[3] To allow for the development of potentially meritorious claims, federal courts must construe *pro se* pleadings liberally. *See, e.g., Boag v. MacDougall*, 454 U.S. 364, 365 (1982).

[4] Defendants produced a disk containing the relevant videos. (*See* ECF No. 88.)

1. **Escort to Arnold's Cell**

   i.  **Walking to Arnold's Cell**

Cregger and Bogle began escorting Arnold to his cell around 1:55 p.m. on August 5, 2021. (*See generally* 210806163329_MCTC1031APorchRear_(1)_4.wmv [hereinafter Entrance Video].) As the three men entered the MCTC building from outside, Arnold—in handcuffs and leg restraints—walked normally. (*Id.* at 0:48.) Each officer walked slightly behind Arnold and held one of his arms as they passed through the entrance area into the "indoor recreation & television/classroom" space. (*Id.*; 210806163329_MCTC1021APorchEntry_(1)_3.wmv at 0:50; Am. Compl. ¶ 17.) The surveillance videos do not appear to depict anything of significance as they walked through the recreation room. (*See* 210806163329_MCTC1011ADayRoom_(1)_2.wmv at 0:58 [hereinafter Indoor-Recreation Video].) But Arnold claims that tensions escalated at that time based on a verbal exchange he had with Cregger. According to Arnold, the conversation went as follows:

> Arnold: "I asked to come back in 45 minutes ago."
>
> Cregger: "[Y]ou don't tell us what to fucking do."
>
> Arnold: "What, are you going to assault me on the camera[?]"
>
> Cregger: "Oh, so you want to play it that way?"

(Am. Compl. ¶ 17.)

After that purported back-and-forth, the officers and Arnold continued into the hallway leading to Arnold's cell. (Indoor-Recreation Video at 1:10.) Trouble began shortly thereafter, but the parties' accounts differ as to what occurred. For his part, Arnold claims that Cregger was the aggressor and that shortly after they entered the hallway, Cregger "grab[bed]

[Arnold's] handcuffs . . . and painfully raised [his] arms very high while very quickly propelling [him] down [the] hallway." (Am. Compl. ¶ 17.) The officers disagree, asserting that Arnold was the instigator because he tried to pull away from them. (Bogle Aff. ¶ 5; Cregger Aff. ¶ 5 [ECF No. 83-5].) The video evidence is not conclusive either way. (*See* 210806163329_MCTC1061AWing3_(1)_7.wmv at 1:16 [hereinafter Start-of-Hallway Video].)

Further down the hallway, the struggle intensified. (*See* 210806163329_MCTC1071AWing4_(1)_8 at 1:27.wmv [hereinafter End-of-Hallway Video].) Arnold and the officers then made a sharp left turn toward Arnold's cell and disappeared from the surveillance cameras' views. (*Id.* at 1:30.) The parties' accounts continue to conflict regarding what happened next.

### ii. At Arnold's Cell

To start with Arnold's version of events, he contends that, when they reached his cell, Cregger stepped on his leg irons and pushed him to the floor. (Am. Compl. ¶ 17, Ex. B.) Arnold claims that Cregger then "jumped on top of [him], . . . injuring [his] left knee[] and right shoulder," and repeatedly punched his left side. (*Id.* ¶ 17.) Next, Arnold states that Cregger kicked him multiple times and asked, "Have you had enough?" before pulling Arnold up by his wrists and collar. (*Id.*) After Cregger exited and shut the cell door, Arnold asserts that he put his hands through the slot to have his handcuffs removed. Rather than simply removing the handcuffs, however, Cregger allegedly pulled Arnold's arms through the slot, further injuring his shoulder. (*Id.*) According to Arnold, Bogle observed this entire event but did not intervene. (*Id.*)

Cregger and Bogle provide entirely different accounts of what transpired. They claim that Arnold continued to resist as they approached his cell, so they placed him against the wall, then on the floor to better control him. (Bogle Aff. ¶ 5; Cregger Aff. ¶ 5.) Once Arnold calmed down, the officers state that they put Arnold in his cell and removed his leg restraints. (Bogle Aff. ¶ 5; Cregger Aff. ¶ 6.) The officers then exited the cell, closed the door, and attempted to remove Arnold's handcuffs through the cell-door slot. (Bogle Aff. ¶ 5; Cregger Aff. ¶ 6.) Arnold pulled away again, so the officers used the handcuffs' tether to hold his hands in place while they removed his handcuffs. (Bogle Aff. ¶ 5; Cregger Aff. ¶ 6.) Both officers insist that Arnold's claims are false, that they followed standard procedures, and that they did not use any unnecessary force as part of escorting him to his cell. (Bogle Aff. ¶ 6; Cregger Aff. ¶ 8.) Bogle further contends that he called a nurse to check on Arnold after noticing a scrape on Arnold's hand once he was back in his cell. (Bogle Aff. ¶ 7.) Both officers filed reports on the day of the incident that reflect their accounts. (Bogle Aff. Ex. A; Cregger Aff. Ex. A.)

### iii. Walking Away from Arnold's Cell

Less than two minutes after disappearing from the surveillance video, Bogle reentered the main hallway. (End-of-Hallway Video at 2:53.) Approximately 10 seconds later, Cregger rejoined him. (*Id.* at 3:04.) They proceeded down the hall away from Arnold's cell while Cregger examined and removed a glove from his right hand. (210806163329_MCTC1051AWing2_(1)_6.wmv at 3:07; Start-of-Hallway Video at 3:10.) Cregger continued to examine his right hand as they passed through the indoor recreation area and threw his glove on the floor after Bogle exited that room. (Indoor-Recreation Video at 3:25, 3:36.) The officers then walked back outside. (Entrance Video at 3:43.)

### 2. Post-Escort

Shortly after Arnold returned to his cell, a nurse came by to check on him. (Am. Compl. ¶ 18; Honaker Aff. ¶ 4 [ECF No. 83-10].) The medical notes from the nurse's visit reflect that Arnold primarily complained about his knuckles and knees bleeding, which he reported were "from officers restrain[ing] him for not going back to his cell."[5] (Honaker Aff. Ex. A.) To the nurse, it appeared that the abrasions on Arnold's knuckles were from him punching something and a one-inch laceration on his left forearm was from his handcuffs. (*Id.*) The nurse did not observe any other injuries and cleaned Arnold's wounds with a disinfectant. (*Id.*) Arnold asserts that the nurse also saw the "reddening left side of [his] abdomen" and that he reported severe pain in his knee and shoulder. (Am. Compl. ¶ 18.)

Less than an hour after the nurse's visit, an MCTC mental health clinician saw Arnold as part of her daily rounds. (Buchanan Aff. ¶ 4 [ECF No. 83-7].) Arnold told the clinician that "he was assaulted by security staff." (*Id.* Ex. A (cleaned up).) He further shared that, despite him not resisting, his escort officers "kept speeding up while walking," "pull[ed] his arms up his back," and "started kicking and punching him" after pushing him onto the ground in his cell. (*Id.*) Arnold also reported that he was injured and his side was bruised. (*Id.*) Although he did not lift his shirt to show the clinician any injury, she recalls seeing a mark on Arnold's face and injuries to his knuckles. (*Id.* ¶ 5.) The clinician emailed Lieutenant G. Berry that afternoon to report the alleged assault. (*Id.* ¶ 6, Ex. A.)

---

[5] Defendants submitted photos of Arnold's injuries, which were taken on August 5, 6, and 9, 2021. (*See* Berry Aff. Ex. A [ECF Nos. 83-2 to 83-3].)

The next morning, another nurse observed that Arnold had a large circular bruise on his side.[6] (Honaker Aff. Ex. A.) Arnold told that nurse that he was "assaulted last night" and "had an injury on his left knee." (*Id.*) Approximately one week later, a third nurse noted the bruise on Arnold's left side, which Arnold said was from an altercation on August 5. (*Id.*)

## B. Warden Artrip

On August 9, 2021, four days after the incident with Cregger and Bogle, Warden Artrip moved Arnold—against his wishes—to a camera cell in MCTC.[7] Following this move, Arnold sent a written complaint to Artrip about "the abuses [he has] suffered," and "the loss of all priv[i]leges [he has] earned." (ECF No. 69-1 at 2.) The crux of Arnold's claim against Artrip in the instant matter, however, is not based on his move to the camera cell; it is based on Artrip supposedly having prior knowledge of Cregger's and Bogle's "records of violence" but doing nothing to prevent them from inflicting additional harm on him and other inmates. (Am. Compl. ¶ 33.)

For his part, Artrip contends that he moved Arnold to a camera cell for his safety and that the move was "routine procedure" in light of Cregger's alleged assault, so he could "further assess the situation and . . . capture any additional incidents . . . on camera." (Artrip Aff. ¶¶ 4–5.) Arnold's privileges, according to Artrip, did not change because of the move. (*Id.*

---

[6] This nurse's notes state that Arnold had a bruise on his *right* side (Honaker Aff. Ex. A), but that appears to be a typographical error. Records from subsequent evaluations of Arnold, photographs of Arnold's injures, and Arnold's complaint all reflect that he had a bruise on his *left* side. (*See id.*; Berry Aff. Ex. A; Am. Compl. ¶¶ 17–18.)

[7] Defendants shared videos of this move on the same disk as the surveillance-camera videos. (*See* ECF No. 88.)

¶ 6.) Artrip also claims that Cregger and Bogle do not have records of violence against inmates at MCTC and that neither officer has been disciplined for any reason. (*Id.* ¶ 7.)

## C. Procedural History

Arnold initially filed this lawsuit on October 14, 2021, approximately two months after the incident with Cregger and Bogle. At the conclusion of a lengthy procedural history not relevant here, the court permitted Arnold to proceed with his current complaint in March 2023, which sets forth various claims against Defendants under 42 U.S.C. § 1983.[8] After additional discovery, both Arnold and Defendants moved for summary judgment. (ECF Nos. 82, 86, 93.)

## II.   STANDARD OF REVIEW

Under Rule 56(a), the court can only "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Glynn v. EDO Corp.*, 710 F.3d 209, 213 (4th Cir. 2013). When making this determination, the court considers "the pleadings, depositions, answers to interrogatories, and admissions on file, together with [any] affidavits" filed by the parties. *Celotex*, 477 U.S. at 322. Whether a fact is material depends on the relevant substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* (citation omitted). The moving party bears

---

[8] Lieutenant G. Berry and Officer T. Thomas were previously defendants in this matter, but the court granted Arnold's motion to voluntarily dismiss them as parties. (*See* ECF Nos. 94, 96.)

the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If that burden has been met, the nonmoving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

In determining whether a genuine issue of material fact exists, the court must view the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Glynn*, 710 F.3d at 213 (citing *Bonds v. Leavitt*, 629 F.3d 369, 380 (4th Cir. 2011)). Indeed, "[i]t is an 'axiom that in ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307, 310 (4th Cir. 2014) (internal alteration omitted) (quoting *Tolan v. Cotton*, 572 U.S. 650, 651 (2014)). Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255. The nonmoving party must, however, "set forth specific facts that go beyond the 'mere existence of a scintilla of evidence.'" *Glynn*, 710 F.3d at 213 (quoting *Anderson*, 477 U.S. at 252). It may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *See Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874–75 (4th Cir. 1992). Nevertheless, a party's sworn statements about its own personal accounts are sufficient to create a genuine issue of material fact even without other corroborating evidence. *Clark v. Payne*, No. 21-6634, 2023 WL 4888837, at *1 (4th Cir. Aug. 1, 2023) (citing *Gray v. Spillman*, 925 F.2d 90, 95 (4th Cir. 1991)).

### III.   ANALYSIS

The court will first analyze Defendants' motion for summary judgment, then address Arnold's motion. When reviewing the merits of Defendants' motion, the court views the evidence in the light most favorable to Arnold; when reviewing Arnold's motion, the court views the evidence in the light most favorable to Defendants. *See Glynn*, 710 F.3d at 213.

### A.  Defendants' Motion for Summary Judgment

Defendants move for summary judgment on all of Arnold's claims, which he brings against each Defendant in his individual and official capacities for monetary damages, a declaratory judgment, and injunctive relief. As an initial matter, the court will grant summary judgment on the official-capacity claims because they are deficient as a matter of law. Sovereign immunity bars Arnold's official-capacity damages claims. *See, e.g.*, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996). And because he is no longer incarcerated, Arnold's requests for declaratory and injunctive relief against Defendants in their official capacities are moot. *See, e.g.*, *Bratcher v. Clarke*, 770 F. App'x 105, 106 (4th Cir. 2019); *Hall v. Amonette*, No. 7:20-cv-00460, 2021 WL 2815166, at *2 (W.D. Va. July 6, 2021). For the individual-capacity claims, the court will grant Defendants' motion for summary judgment as to Artrip, but deny it as to Cregger and Bogle.

### 1.  Officer Cregger

Officer Cregger moves for summary judgment against Arnold, who alleges that Cregger used excessive force against him in violation of the Eighth Amendment.[9] In his motion,

---

[9] Defendants construe Arnold's complaint as also setting forth assault and battery claims against Cregger and argue that he is entitled to sovereign immunity on those state law claims. (*See* Defs.' Br. Supp. Mot. Summ. J. at 31–33 [ECF No. 83].) That argument is meritless. Under Virginia law, "state employees are not entitled to the protection of sovereign immunity when accused of an intentional tort." *Shvern v. Desrosiers*, No. 99-2159,

Cregger argues that he did not use excessive force against Arnold and, even if he did, he is entitled to qualified immunity because his conduct did not violate clearly established law. (Defs.' Br. Supp. Mot. Summ. J. at 15–20, 33–34.) The court rejects each of these arguments.

### i. Excessive Force Claim

The Eighth Amendment of the U.S. Constitution prohibits "cruel and unusual punishments," and claims of excessive force by an inmate against a correctional officer are analyzed under the Eighth Amendment. *See, e.g.*, *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996) (noting that the Eighth Amendment "not only outlaws excessive sentences but also protects inmates from inhumane treatment . . . while imprisoned.") An Eighth Amendment excessive force claim "involves both an objective and a subjective component." *Dean v. Jones*, 984 F.3d 295, 302 (4th Cir. 2021)). In other words, to succeed on his claim against Cregger, Arnold must establish that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation" (the objective component) and that Cregger "acted with a sufficiently culpable state of mind" (the subjective component). *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (cleaned up); *see, e.g., Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

The first prong of the analysis—the objective component—measures the nature of the force employed, asking whether that force was "sufficiently serious to establish a cause of action." *Brooks v. Johnson*, 924 F.3d 104, 112 (4th Cir. 2019). This is not a high bar; "[s]o long as the force used is more than *de minimis*, the objective component is satisfied, regardless of

---

2000 WL 1729655, at *1 (4th Cir. Nov. 22, 2000) (collecting cases); *see also Sacra v. Haga*, No. 7:22-cv-00244, 2023 WL 6217759, at *8 (W.D. Va. Sept. 25, 2023) (finding the same in connection with a prisoner's assault and battery claims against correctional officers). Any assault and battery claims that Arnold brings against Cregger therefore survive to trial because, as explained below, Arnold's excessive force claim survives summary judgment. *See Rowland v. Perry*, 41 F.3d 167, 174 (4th Cir. 1994).

the extent of the injury." *Dean*, 984 F.3d at 303; *see also Thompson v. Virginia*, 878 F.3d 89, 98 (4th Cir. 2017) ("[A] prisoner who suffers a minor, but malicious, injury may be able to prevail on an excessive force claim . . . .").

The second prong of the analysis—the subjective component—asks "whether the officer[] acted with a sufficiently culpable state of mind." *Dean*, 984 F.3d at 302 (cleaned up). "The state of mind required here is wantonness in the infliction of pain." *Id.* (cleaned up); *see Iko v. Shreve*, 535 F.3d 225, 239 (4th Cir. 2008). "Whether an inmate can establish that impermissible motive turns on 'whether force was applied in a good[-]faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Dean*, 984 F.3d at 302 (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)). The Fourth Circuit has explained that "officers employ force in 'good faith'—and thus permissibly—when they are motivated by an 'immediate risk to physical safety' or threat to prison order." *Id.* (quoting *Brooks*, 924 F.3d at 113). But when officers inflict pain to punish or retaliate against an inmate for his prior conduct, they cross the line into impermissible and unconstitutional conduct. *Brooks*, 924 F.3d at 113; *see also Boone v. Stallings*, 583 F. App'x 174, 177 (4th Cir. 2014) ("[T]he Eighth Amendment does not permit a correctional officer to respond to a misbehaving inmate in kind.").

"On summary judgment . . . the inquiry under the subjective component boils down to whether a reasonable jury could determine that an officer acted with malice, applying force punitively and 'for the very purpose of causing harm.'" *Dean*, 984 F.3d at 302 (quoting *Whitley*, 475 U.S. at 320–21). Because direct evidence of motive or intent is hard to come by, the Supreme Court set out four factors—the so-called *Whitley* factors—from which the factfinder

"may infer the existence of the subjective state of mind required for an Eighth Amendment violation." *Brooks*, 924 F.3d at 116 (cleaned up) (quoting *Hope v. Pelzer*, 536 U.S. 730, 738 (2002)). Those factors are:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) any efforts made to temper the severity of a forceful response.

*Iko*, 535 F.3d at 239 (cleaned up) (quoting *Whitley*, 475 U.S. at 321). "If a reasonable jury could find, based on inferences drawn under the *Whitley* factors or other evidence, that correctional officers used force maliciously to punish or retaliate against an inmate, then summary judgment is not appropriate." *Dean*, 984 F.3d at 302–03.

Viewed in the light most favorable to Arnold, there are genuine disputes of material facts that preclude summary judgment for Cregger in his individual capacity.

On the objective prong, a jury could believe that Cregger used more than *de minimis* force against Arnold. In his verified complaint,[10] Arnold states that Cregger "pushed, tripped, . . . jumped on top of[,] . . . punch[ed][,] . . . and kicked" him. (Am. Compl. ¶ 17.) As a result, Arnold purportedly suffered injuries including bleeding, severe pain in his knee and shoulder, and significant bruising. (*Id.* ¶ 18; *see* Berry Aff. Ex. A; Honaker Aff. Ex. A.) A reasonable jury could credit this account and, in doing so, find that Cregger's use of force was far more than *de minimis*, therefore satisfying the objective prong of the excessive-force analysis.

---

[10] "[A] *verified* complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge." *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (emphasis in original).

On the subjective prong, factual disputes persist, and a jury could find that Cregger acted with malice and applied force punitively against Arnold. Specifically, a jury could believe Arnold's account that Cregger battered him in retaliation for Arnold rebuking Cregger and Bogle for arriving 45 minutes after he requested to go back to his cell. (*See* Am. Compl. ¶ 17.) An officer using force against an inmate to punish him for his previous conduct, rather than to ensure safety or prison discipline, is impermissible under the Eighth Amendment. *See Brooks*, 924 F.3d at 113–14. Moreover, when the evidence is viewed in the light most favorable to Arnold, the *Whitley* factors also support the inference that Cregger acted with a sufficiently culpable state of mind.

First, Cregger may not have needed to use much, if any, force when escorting Arnold to his cell. Arnold claims that he was not resisting in the hallway when Cregger grabbed his handcuffs, raised his arms, and propelled him forward, nor was he resisting at his cell when Cregger allegedly assaulted him. (Am. Compl. ¶ 17.) In contrast to this narrative, Cregger claims that he only used reasonable force after Arnold resisted in the hallway and at his cell. (Cregger Aff. ¶¶ 5–6, 8.) But the video evidence does not show clearly who started the altercation in the hallway or what happened at Arnold's cell. Therefore, a reasonable jury could believe Arnold and determine that Cregger unnecessarily used force against him.

Second, even if Cregger needed to use some force during the escort, a reasonable jury could nonetheless find that Cregger pushing, punching, and kicking Arnold—if it believes Arnold—was disproportionate to the amount of force that was required.

Third, a reasonable jury could credit Arnold's account of the events and determine that any threat perceived by Cregger did not justify the force used against Arnold, especially if

Bogle was also present and Arnold was restrained on his cell floor. *See Dean*, 984 F.3d at 302 (quoting *Thompson*, 878 F.3d at 102) ("[T]he use of force on an inmate who is 'restrained and compliant and posing no physical threat' raises the specter of . . . an impermissible motive.").

Fourth, a jury could believe that Cregger did not temper the force he used because, based on Arnold's account, Cregger repeatedly hit Arnold even after he was subdued and did not seek medical help for his injuries. *See Iko*, 535 F.3d at 240 (weighing this factor against prison guards who did not seek medical help for a prisoner after using pepper spray on him). Taken together, the *Whitley* factors demonstrate that a jury could infer Cregger wantonly inflicted pain on Arnold, which would satisfy the subjective prong of the excessive force analysis.

At bottom, the record related to the excessive force claim against Cregger requires a factfinder to draw inferences and make credibility determinations between Arnold's and Cregger's conflicting versions of events. The court must therefore deny Cregger's summary-judgment motion for Arnold's claim against him in his individual capacity because "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions." *Anderson*, 477 U.S. at 255.

### ii. Qualified Immunity

Next, Cregger argues that, even if the court denies summary judgment on the merits of Arnold's excessive force claim, he is still entitled to summary judgment based on qualified immunity. (Defs.' Br. Supp. Mot. Summ. J. at 33–34.) The court disagrees.

Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights

of which a reasonable person would have known." *Smith v. Gilchrist*, 749 F.3d 302, 307 (4th Cir. 2014) (cleaned up) (quoting *Stanton v. Sims*, 571 U.S. 3, 5–6 (2013)). Evaluating a claim of qualified immunity involves a two-part test: (1) "whether the facts, viewed in the light most favorable to the plaintiff, show that the officer's conduct violated a federal [constitutional] right," and (2) "whether [that] right was clearly established at the time the violation occurred such that a reasonable person would have known that his conduct was unconstitutional." *Smith v. Ray*, 781 F.3d 95, 100 (4th Cir. 2015). If the answer to either question is "no," the doctrine of qualified immunity shields Cregger from liability. *See Clem v. Corbeau*, 284 F.3d 543, 549 (4th Cir. 2002).

As discussed, when viewed in the light most favorable to Arnold, the facts show that Cregger used excessive force against Arnold in violation of the Eighth Amendment. Therefore, the first part of the qualified-immunity analysis is satisfied. The second part of the analysis is also satisfied because, when Cregger allegedly assaulted Arnold, it was clearly established law that a prison guard violates an inmate's Eighth Amendment rights if a guard maliciously strikes an inmate. *See, e.g., Wilkins v. Gaddy*, 559 U.S. 34, 37–40 (2010); *Ussery v. Mansfield*, 786 F.3d 332, 337–38 (4th Cir. 2015). Cregger, of course, disputes that he assailed Arnold. But that is a material factual dispute that the jury must decide. Accordingly, Cregger is not entitled to qualified immunity at this stage. *See Buonocore v. Harris*, 65 F.3d 347, 359–60 (4th Cir. 1995)) ("[S]ummary judgment on qualified immunity grounds is improper as long as there remains any material factual dispute regarding the actual conduct of the defendants.").

## 2.  Officer Bogle

Officer Bogle moves for summary judgment on Arnold's bystander liability claim, which is based on Bogle allegedly not intervening to protect Arnold from Cregger's supposedly wanton actions.[11] Like Cregger's motion, the court will deny Bogle's motion because material facts remain in dispute about what happened when Cregger, Bogle, and Arnold were off-camera at Arnold's cell.

### i.  Bystander Liability

The Fourth Circuit "recognizes a cause of action for bystander liability 'premised on a[n] . . . officer's duty to uphold the law and protect the public from illegal acts, regardless of who commits them.'" *Stevenson v. City of Seat Pleasant*, 743 F.3d 411, 416−17 (4th Cir. 2014) (quoting *Randall v. Prince George's Cnty.*, 302 F.3d 188, 203 (4th Cir. 2002)). The threshold requirement for a bystander liability claim is an underlying constitutional violation by another officer. *See Thomas v. Holly*, 533 F. App'x 208, 221 (4th Cir. 2013). As explained above, that requirement is satisfied here because Arnold has set forth specific facts from which a reasonable jury could find Cregger violated his Eighth Amendment rights. As such, Bogle can "be liable under § 1983, on a theory of bystander liability, if he: (1) kn[ew] that [Cregger was] violating [Arnold's] constitutional rights; (2) ha[d] a reasonable opportunity to prevent the harm; and (3) [chose] not to act." *Randall*, 302 F.3d at 204.

---

[11] Although Arnold asserts that Bogle "violated due process rights" (Am. Compl. ¶ 31), the allegations make clear that his bystander liability claim is related to Cregger's purported use of excessive force while Arnold was an inmate, not a pretrial detainee. The court therefore analyzes Arnold's claim against Bogle through the lens of bystander liability for an alleged Eighth Amendment violation, not a Fourteenth Amendment due-process violation. *See United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) ("[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.")

A reasonable jury could find that all three bystander-liability elements are satisfied in the present matter. First, it is undisputed that Bogle was present at Arnold's cell when the alleged incident with Cregger occurred. (*See* Am. Compl. ¶ 17; Bogle Aff. ¶¶ 5–6.) Therefore, if Cregger's assault happened as Arnold describes, Bogle—or any reasonable officer—would have known that Cregger was violating Arnold's constitutional right to be free from excessive force. Second, Bogle had a reasonable opportunity to intervene and prevent, or stop, Cregger's purported assault. According to Arnold, the assault lasted for a significant amount of time as Cregger supposedly jumped on him, repeatedly punched him, then stood up and kicked him. (Am. Compl. ¶ 17.) Because Bogle was at the cell during the claimed incident, a jury could find that he had a reasonable opportunity to stop it from happening or prevent it from continuing shortly after it began. Third, Arnold's verified complaint indicates that Bogle chose not to act, but instead "chose to stand back." (*Id.* ¶¶ 17, 31.) Overall, given Arnold's sworn statements, a jury could find that each of the elements of bystander liability are met, so Arnold's claim against Bogle in his individual capacity survives summary judgment.

### ii. Qualified Immunity

The court now evaluates Bogle's qualified immunity defense. (*See* Defs.' Br. Supp. Mot. Summ. J. at 33–34.) When viewing the facts in the light most favorable to Arnold, Bogle violated Arnold's constitutional rights under a theory of bystander liability by not intervening when Cregger purportedly assaulted him. Additionally, at the time of Cregger's alleged attack, it was clearly established that his actions violated Arnold's Eighth Amendment rights, *see, e.g.*, *Ussery*, 786 F.3d at 337–38, and that Bogle was obligated to intervene, *see Thompson*, 878 F.3d at 109–10. Bogle is therefore not entitled to qualified immunity at this stage because material

factual disputes remain about his and Cregger's conduct at Arnold's cell. *See Buonocore*, 65 F.3d at 359–60.

### 3. Warden Artrip

Warden Artrip, as the final defendant, also moves for summary judgment on Arnold's supervisory liability claim.

It is well established that a supervisory government official cannot be held liable under 42 U.S.C. § 1983 for the actions of his subordinates solely on the basis of *respondeat superior*. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–92 (1978). Nonetheless, a supervisory official may be liable for his subordinates' acts if the supervisor himself bears personal responsibility for those acts. *Ashcroft v. Iqbal*, 556 U.S. 662, 676–77 (2009). "Liability in this context is not premised on *respondeat superior*, but on a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984) (internal citation omitted).

To prevail on a supervisory liability claim, a plaintiff must show:

> (1) that the supervisor had actual or constructive knowledge that [his] subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to [individuals] like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices[]"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).

"The plaintiff . . . assumes a heavy burden of proof in supervisory liability cases," for "[h]e not only must demonstrate that the prisoners face a pervasive and unreasonable risk of harm from some specified source, but he must show that the supervisor's corrective inaction amounts to deliberate indifference or 'tacit authorization of the offensive [practices].'" *Slakan*, 737 F.2d at 373 (alteration in original) (quoting *Orpiano v. Johnson*, 632 F.2d 1096, 1101 (4th Cir. 1980)). The plaintiff cannot establish supervisory liability based on the deliberate misconduct "of [the supervisor's] properly trained employees when [the supervisor] has no basis upon which to anticipate the misconduct." *Id.* In that same vein, the plaintiff also "cannot satisfy his burden of proof by pointing to a single incident or isolated incidents." *Id.*

Arnold does not carry his heavy burden of proof here. He claims—but does not present evidence to support—that Artrip "had prior knowledg[e]" of Cregger's and Bogle's allegedly violent records and did nothing to protect the prison population from them. (Am. Compl. ¶ 33.) Arnold also argues, without evidentiary support, that Artrip "neglects to be forthcoming in regards as to why defendant Bogle was demoted from a position of Sgt. [b]ack to the rank of officer" and "neglects to include employee records of both defendants Cregger and Bogle." (Pl.'s Br. Opp'n Mot. Summ. J. at 2 [ECF No. 90].) For his part, Artrip claims that he has "no knowledge" of any incidents of violence involving Cregger and Bogle and that "[n]either officer has been disciplined for any reason." (Artrip Aff. ¶ 7.) Because Arnold has failed to provide any evidence (apart from his self-serving, conclusory assertions)[12] that Artrip knew of

---

[12] Arnold's assertion that Artrip "had prior knowledg[e]" of Cregger and Bogle's violent records (Am. Compl. ¶ 33) is not entitled to deference because Arnold provides no foundation for how he is privy to Artrip's personal knowledge or other evidence to support such a statement. *Cf. Midland Mortg. Corp. v. Wells Fargo Bank, N.A.*, 926 F. Supp. 2d 780, 786 (D.S.C. 2013) (citing *Latif v. Cmty. Coll. of Balt.*, 354 F. App'x 828, 830 (4th Cir.2009)) ("A party cannot create a genuine issue of material fact solely with conclusions in his or her own affidavit or deposition that are not based on personal knowledge.").

past violence or threats to Arnold's safety by Cregger and Bogle, his supervisory liability claim against Artrip cannot survive. *See, e.g.*, *Hoglan v. Mathena*, No. 7:18-cv-00140, 2023 WL 1423747, at *5 (W.D. Va. Jan. 31, 2023) (citing *Thompson*, 878 F.3d at 110–11). Accordingly, the court will grant Artrip's motion for summary judgment.[13]

## B. Arnold's Motion for Summary Judgment

With the above in mind, the court will deny Arnold's motion for summary judgment.[14] Because the court will grant summary judgment as to Artrip, it necessarily must deny Arnold's summary-judgment motion for the claim against him. The court must also deny Arnold's summary-judgment motion as to the claims against Cregger and Bogle. Crediting their version of events when analyzing Arnold's motion, the officers have set forth ample evidence to create a genuine issue of material fact as to whether they are liable to Arnold. *See* Fed. R. Civ. P. 56(a); *Glynn*, 710 F.3d at 213.

## IV.   CONCLUSION

For the foregoing reasons, the court will (1) grant Defendants' motion for summary judgment as to (a) the official-capacity claims against all Defendants and (b) the individual-capacity claim against Artrip, (2) deny Defendants' motion for summary judgment as to the individual-capacity claims against Cregger and Bogle, and (3) deny Arnold's motion

---

[13] Because the court finds summary judgment is proper on the merits of Arnold's claim, it does not reach the issue of whether Artrip is entitled to qualified immunity.

[14] At the end of his initial motion for summary judgment and through a separate filing with the court, Arnold asks to explore the possibility of an alternative dispute resolution with Defendants. (Pl.'s Mot. Summ. J. at 7; Pl.'s Req. Alternative Dispute Resolution [ECF No. 87].) As is its customary practice, the court encourages the parties to engage in settlement discussions and will direct Defendants to advise the court of their position about referring the case to a magistrate judge for mediation on the remaining claims.

for summary judgment. Accordingly, only Arnold's excessive force claim against Cregger and bystander liability claim against Bogle, in their individual capacities, will remain.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to the parties and all counsel of record.

**ENTERED** this 29th day of February, 2024.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE